UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| STEVEN D. STEWART,<br><br>Plaintiff,<br><br>v.<br><br>DR. REY PALOP, CANDACE WHITMAN, LISA ALBRECHT, NURSE AMY ZIEGLER, NURSE LAURA, and PAULA STELSEL,<br><br>Defendants. | Case No. 25-CV-391-JPS<br><br>**ORDER** |
| STEVEN D. STEWART,<br><br>Plaintiff,<br><br>v.<br><br>DR. REY PALOP, CANDACE WHITMAN, LISA ALBRECHT, and JOHN DOE,<br><br>Defendants. | Case No. 25-CV-1014-JPS<br><br>**ORDER** |
| STEVEN D. STEWART,<br><br>Plaintiff,<br><br>v.<br><br>DR. REY PALOP, DR. SHIRLEY GODIWALLA, CANDACE WHITMAN, and LISA ALBRECHT,<br><br>Defendants. | Case No. 25-CV-1015-JPS<br><br>**ORDER** |

Plaintiff Steven D. Stewart, an inmate confined at the John C. Burke Correctional Center, filed three separate pro se complaints under 42 U.S.C. § 1983 alleging that Defendants violated his constitutional rights by failing to provide him adequate medical treatment. Case Nos. 25-CV-391, 25-CV-1014, and 25-CV-1015. The Court screened the complaints separately and allowed all three cases to proceed. In doing so, however, the Court noted that Plaintiff's allegations were largely similar and that consolidation under Federal Rule of Civil Procedure 42 may be appropriate. *See, e.g.,* Case No. 25-CV-1015, ECF No. 6 at 4.[1] On January 13, 2026, the Court granted Defendants' motion to consolidate and designated Case No. 25-CV-391 as the lead case for all motions to be filed. ECF No. 19. The Court denied Defendants' motion to extend the deadline to file an exhaustion motion in case No. 25-CV-391 because the motion was untimely; however, the Court granted Defendants' motion for an extension of time in Case Nos. 25-CV-1014 and 25-CV-1015. ECF No. 19. Thereafter, Plaintiff filed a motion for the return of the filing fees in Case Nos. 25-CV-1014 and 25-CV-1015. ECF No. 20. Plaintiff cites no authority for his request; it was Plaintiff who chose to file three separate cases as opposed to one case. As such, the Court will deny Plaintiff's motion to return the filing fees.

On February 13, 2026, Defendants filed a motion for partial summary judgment based on the failure to exhaust administrative remedies. ECF No. 21.[2] Plaintiff filed a brief in opposition and Defendants replied. ECF Nos.

---

[1]All docket citations contained herein will be to the lead case (25-CV-391), unless otherwise indicated by reference to a member case (25-CV-1014 or 25-CV-1015).

[2]Counsel for Defendants acknowledges that she does not currently represent Kuern, whose identity has not been identified. ECF No. 22 at 2 n.1. Counsel argues, however, that the motion should dispose of certain allegations against Kuern.

26, 30. Thereafter, Plaintiff filed a motion to file a surreply. ECF No. 33. The Court will deny Plaintiff's motion. Courts allow a surreply brief "only in limited circumstances to address new arguments or evidence raised in the reply brief or objections to the admissibility of the evidence cited in the response." *Lawrenceburg Power, LLC v. Lawrenceburg Mun. Utilities,* 410 F. Supp. 3d 943, 949 (S.D. Ind. 2019). Here, Defendants did not raise new arguments or evidence in their reply. As such, the Court will deny Plaintiff's motion to file a surreply.

The motion for partial summary judgment is therefore now fully briefed, and for the reasons discussed below, the Court will grant Defendants' motion for partial summary judgment.

## 1. STANDARD OF REVIEW

### 1.1 Summary Judgment

Federal Rule of Civil Procedure 56 provides that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The Court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016).

### 1.2 Exhaustion of Prisoner Administrative Remedies

The Prison Litigation Reform Act ("PLRA") establishes that, prior to filing a lawsuit complaining about prison conditions, a prisoner must

exhaust "such administrative remedies as are available." 42 U.S.C. § 1997e(a). To do so, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). He must do so precisely in accordance with those rules; substantial compliance does not satisfy the PLRA. *Id.*; *Burrell v. Powers*, 431 F.3d 282, 284–85 (7th Cir. 2005). A suit must be dismissed if it was filed before exhaustion was complete, even if exhaustion is achieved before judgment is entered. *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). The exhaustion requirement furthers several purposes, including restricting frivolous claims, giving prison officials the opportunity to address situations internally, giving the parties the opportunity to develop the factual record, and reducing the scope of litigation. *Smith v. Zachary*, 255 F.3d 446, 450–51 (7th Cir. 2001). Failure to exhaust administrative remedies is an affirmative defense to be proven by a defendant. *Westefer v. Snyder*, 422 F.3d 570, 577 (7th Cir. 2005).

#### 1.2.1 Inmate Complaint Review System

The Wisconsin Department of Corrections (the "DOC") maintains an inmate complaint review system ("ICRS") to provide a forum for administrative complaints. Wis. Admin. Code § DOC 310.04. The ICRS "allow[s] inmates to raise in an orderly fashion issues regarding department policies, rules, living conditions, and employee actions that personally affect the inmate or institution environment, including civil rights claims." *Id.* § DOC 310.01(2)(a). Before commencing a civil action or special proceedings, "inmate[s] shall exhaust all administrative remedies the [DOC] has promulgated by rule." *Id*. § DOC 310.05.

There are two steps an inmate must take to exhaust the available administrative remedies. First, the inmate must file an offender complaint

with the Institution Complaint Examiner ("ICE") within fourteen days of the events giving rise to the complaint. *Id.* § DOC 310.07(2). The ICE may reject the complaint or return the complaint to the inmate and allow him or her to correct any issue(s) and re-file within ten days. *See id.* § DOC 310.10(5),(6). If the complaint is rejected, the inmate may appeal the rejection to the appropriate reviewing authority within ten days. *Id.* § DOC 310.10(10).[3] If the complaint is not rejected, the ICE issues a recommendation of either dismissal or affirmance to the reviewing authority. *Id.* § DOC 310.10(9),(12). The reviewing authority ("RA") will affirm or dismiss the complaint, in whole or in part, or return the complaint to the ICE for further investigation. *Id.* § DOC 310.11(2).

Second, if the ICE recommends, and the RA accepts, dismissal of the complaint, the inmate may appeal the decision to the Corrections Complaint Examiner ("CCE") within fourteen days. *Id.* §§ DOC 310.09(1), 310.12. The CCE issues a recommendation to the Secretary of the Department of Corrections, who may accept or reject it. *Id.* §§ DOC 310.12(2), 310.13. The inmate exhausts this administrative process when he or she receives the Secretary's decision. *Id.* § DOC 310.13(2),(3). If the inmate does not receive the Secretary's written decision within ninety days of the date of receipt of the appeal in the CCE's office, the inmate shall consider the administrative remedies to be exhausted. *Id.* § DOC 310.13(4).

**2. RELEVANT FACTS**

Defendants' motion for partial summary judgment addresses the issue only of whether Plaintiff exhausted his administrative remedies as to

---

[3]The ICRS defines a "reviewing authority" as "a person who is authorized to review and decide an inmate complaint." Wis. Admin. Code § DOC 310.03(15).

certain portions of his claims. The Court accordingly finds the following facts relevant to the disposition of the issue at hand.

### 2.1 Plaintiff's Allegations

Plaintiff brought Case No. 25-CV-1014 against Defendants Dr. Rey Palop ("Dr. Palop"), Candace Whitman ("Whitman"), Lisa Albrecht ("Albrecht"), and Nurse Kuern ("Kuern"). 25-CV-1014, ECF No. 1 at 1. Plaintiff alleges that Defendants, medical staff at Fox Lake Correctional Institution ("FLCI"), failed to provide him adequate medical treatment. *Id.* at 3. Plaintiff was taken to the University of Wisconsin Urology Clinic on June 3, 2022 for video urodynamic. *Id.* At the time, Plaintiff tested positive for a urinary tract infection ("UTI"), and the urodynamic test was cancelled. *Id.* The UW urology nurse called FLCI health staff and asked when Plaintiff had started the prescribed antibiotics. *Id.* at 3–4. The staff admitted that Plaintiff had started the antibiotics a week earlier. *Id.* at 4. Albrecht told the complaint department that this was not true. *Id.* Dr. Palop, Whitman, Albrecht, and Kuern are all responsible for Plaintiff's UTIs because Plaintiff should have been catharized every thirty days and he should have received his urinalysis quicker. *Id.* Albrecht lied to the ICE on June 15, 2022. *Id.* As a result of Defendants' actions, Plaintiff suffered urinary tract infections, headaches, nausea, kidney pain, bladder spasms, respiratory depression, and gastric pains. *Id.* Additionally, UW records show that Plaintiff is allergic to Amoxicillin and Ibuprofen. *Id.* For unknown reasons, Dr. Palop prescribed Amoxicillin on July 19, 2022, despite clear records showing Plaintiff's allergy. *Id.* On August 28, 2022, Plaintiff saw Kuern and she was not concerned about Plaintiff's allergy issues; Kuern told Plaintiff that there were no records showing he was allergic to Amoxicillin. *Id.* at 5.

Plaintiff brought Case No. 25-CV-1015 against Defendants Dr. Palop, Dr. Godiwalla ("Dr. Godiwalla"), Whitman, and Albrecht. 25-CV-1015, ECF No. 1 at 1. Plaintiff alleges that Defendants, medical staff at FLCI, failed to provide him adequate medical treatment. *Id.* at 2. Plaintiff was taken to the University of Wisconsin Urology Clinic on January 27, 2022, June 3, 2022, and July 15, 2022. *Id.* Plaintiff was diagnosed with a UTI. Dr. Palop prescribed Plaintiff Amoxicillin and Ibuprofen on July 19, 2022. *Id.* Plaintiff was scheduled to see Dr. Palop on September 29, 2022, but saw a new doctor, Dr. Godiwalla, instead. *Id.* Dr. Godiwalla, Dr. Palop, Albrecht, and Whitman all claimed there were no medical records showing that Plaintiff was allergic to Amoxicillin; this was not true. *Id.* Dr. Godiwalla was very unprofessional and argumentative during her visit with Plaintiff. *Id.* at 3. Plaintiff tried to explain that he was suffering from taking this medication and that he experienced depression, gastritis, headaches, kidney pains, and bladder spasms. *Id.* Dr. Godiwalla did not address any of Plaintiff's medical concerns at this visit. *Id.* Plaintiff alleges that Defendants were deliberately indifferent and lied about his medical records and about his known allergies. *Id.* at 4. Defendants also did not treat Plaintiff's severe side effects, kidney pain, headaches, etc., that resulted from taking the medication. *Id.*

### 2.2. Exhaustion Facts

The following facts are taken largely from Defendants' proposed findings of fact. *See* ECF No. 23. Plaintiff filed a response to Defendants' facts and disputes many of the facts. *See* ECF No. 27. However, many of Plaintiff's purported disputes are not supported by specific references to evidence or the cited materials do not support the dispute. Given this, the Court will treat any such facts as undisputed for the purposes of summary judgment. *See* Fed. R. Civ. P. 56(e)(2). Plaintiff does not appear to dispute

Defendants' facts related to his inmate complaints. Instead, Plaintiff argues that he exhausted his administrative remedies for all claims through his exhausted inmate complaints, which the Court will discuss below.

Non-Defendant Emily Davidson ("CCE Davidson") is employed by the DOC as the CCE at the DOC's Central Office in Madison, Wisconsin. In CCE Davidson's capacity as a CCE, she is primarily responsible for performing investigations of offender complaints appealed to the Secretary and recommending decisions and disposition narratives for approval by the Secretary. CCE Davidson has access to the Inmate Complaint Tracking System ("ICTS"), which is a database that stores all documents and reports submitted and generated through the ICRS. CCE Davidson diligently searched and examined the ICTS for records related to inmate complaints and appeals submitted by Plaintiff related to the claims in these cases. Plaintiff's Inmate Complaint History Report ("ICHR") lists all of his recent complaints processed through the ICRS as of October 13, 2025.

Based on CCE Davidson's review of Plaintiff's ICHR, she found four inmate complaints that are potentially related to the claims that the Court allowed Plaintiff to proceed on: FLCI-2022-4544, FLCI-2022-9200, FLCI-2022-14785, and FLCI-2023-17927. CCE Davidson found ICE return letters dated January 13, 2023, May 22, 2023, May 10, 2024, and August 7, 2024, and she found CCE return letters dated April 10, 2024, and April 15, 2024. Among these return letters, only the ICE return letter dated August 7, 2024 pertains to the claims that the Court allowed Plaintiff to proceed on. The return letter indicates that Plaintiff did not attempt to resolve the issue before submitting his inmate complaint, as well as that the inmate complaint Plaintiff attempted to submit contained more than one clearly identified issue and did not contain sufficient information for DOC to

investigate and decide on it. Based on CCE Davidson's review of the ICTS and Plaintiff's ICHR, there is no other inmate complaint, appeal, or returned submission regarding his claims in the current cases.

**FLCI-2022-4544**

On March 16, 2022, the ICE's Office received inmate complaint FLCI-2022-4544. In inmate complaint FLCI-2022-4544, Plaintiff identified the incident date as March 15, 2022, and the issue as: "I been [sic] having severe bladder spasms due to a urinary tract infection [("UTI")] that I told the medical staff at FLCI in at least 4 to 5 medical requests. I need medical treatment A.S.A.P." Plaintiff provided the following details:

> . . . I had seen a few nurses a few times since I came February 28th, 2022. I clearly explained that I went to the UW [(University of Wisconsin)]–Urology, 1-28-22. I was diagnosed with a [UTI] since then. I have not been retested by the DOC - medical staff. I clearly explained to both [the Health Services Unit ("HSU")] staff members, as well as HU [Housing Unit]-9D staff members that I am having severe bladder spasms, with a lot of blood in my urine. The pain can be overwhelming to the point I can [sic] move. I wrote 3 blue slips in a row in three days as well as I have had male and female officers to call [HSU]. I had a 10:40 appointment at [HSU] 3/15/2022. [HSU] had no concerns about my medical emergency. Infections are life and death situations. I was driven in a van to [HSU] only to be told that all medical appointments are cancelled. And on 2nd shift, called HSU, said put in a blue slip. I suffer unwanton [sic] pain!

On March 23, 2022, the reviewing ICE recommended that inmate complaint FLCI-2022-4544 be dismissed because Plaintiff was receiving medical care for the issue presented and the ICE would "not engage in an evaluation of the quality of care versus the demonstrated need as that discussion lays within the bounds of medical discretion." On April 7, 2022, the Reviewing

Authority adopted the ICE's recommendation and dismissed inmate complaint FLCI-2022-4544.

Plaintiff appealed the Reviewing Authority's decision. In his appeal, Plaintiff stated:

> FLCI medical staff violated my constitutional rights to adequate medical care. I been [sic] lied to by the medical staff at FLCI. When it comes to catheter supplies and catheter changes since my first week of arrival February 24th, 2022. Ms. Albrecht, [AHSM] lied on 3/17/22, and Lisa about cath change 4/8/22, on several occasions in the month of March 2022. Dr. Palop and the HSU – Manager, nurses Amy Zigler, Nicole, they gave me a silicone catheter on or about 3/17/22. 3/18/22/ The first day at FLCI I told the medical staff, and at every [HSU] appointment that I was diagnosed with a [UTI] by the UW- Urology, on 1-28-22. The staff at [FLCI] [HSU] would not listen to none of my request for serious medical help due to an allergic reaction from the clots in my urine, and urine coming from the cath down my leg. On March 17th, 2022, while in health services I having [sic] and leaking large amounts of urine from the silicone catheter. Dr. Palop, HSU – Manager? Nurses Amy Zigler, Nicole, and other Jane Doe nurse sent me back to the unit sick with stomach spasms which is a long walk for a sick person. The medical staff Dr. Palop and his nursing staff caused my pain and injuries. The medical staff, Dr. Palop knew nothing about my medical history. I told the entire medical staff that I was [allergic] to Ibuprofen and silicone. They ignored my cries from help several times when I ask for a catheter change from the silicone catheter. March, 22.

The CCE's Office received Plaintiff's appeal on April 18, 2022. On May 3, 2022, the reviewing CCE recommended that Plaintiff's appeal be dismissed. On May 12, 2022, the Office of the Secretary adopted the CCE's recommendation and dismissed Plaintiff's appeal.

**FLCI-2022-9200**

On June 15, 2022, the ICE's Office received inmate complaint FLCI-2022-9200. In inmate complaint FLCI-2022-9200, Plaintiff identified the incident date as June 3, 2022, and the issue as: "Urodynamic testing cancelled due to [UTI]. The Fox Lake health service medical staff were given instruction so that this cancellation would not occur again. I seek compensation for suffering." Plaintiff provided the following details:

> I came from the UW Urology on 6/3/2022. I wrote to the [HSU Manager (HSM)]– Whitman on 6/3/2022. To this day I have not heard a single word from Health Services or the [HSM] – Ms. Whitman. Health services staff, doctors and nurses are fully aware of my [UTI]. The medical staff was put on notice concerning [Plaintiff's] [UTI] at his FLCI arrival. They, [FLCI] medical staff doctors, nurses they was [sic] put on notice, that [Plaintiff] had a urology appointment for urodynamic testing. [Plaintiff] was not properly prepared by the medical staff at FLCI for his 6/3/2022 UW-Urology appointment for urodynamic testing. So [Plaintiff] again tested positive for a [UTI] prior to his 6/3/2022, appointment. [Plaintiff] was not tested for [UTI] and has not been tested by FLCI medical staff. Please process my complaint. FLCI medical staff has been put notice [sic] since [Plaintiff's] arrival at FLCI! Dr. Palop, [HSM], Ms. Whitman, Jane Doe nurses.

On June 30, 2022, the reviewing ICE recommended that inmate complaint FLCI-2022-9200 be dismissed because Plaintiff was receiving medical care for the complained about issue and the ICE would "not engage in an evaluation of the quality of care versus the demonstrated need as that discussion lays within the bounds of professional medical discretion." On July 14, 2022, the Reviewing Authority adopted the ICE's recommendation and dismissed inmate complaint FLCI-2022-9200. Plaintiff appealed the Reviewing Authority's decision. In his appeal, Plaintiff stated:

> I have a pending lawsuit in the Wisconsin Western District Court for the exact same behavior of FLCI medical staff. I told have [sic] HSU at FLCI back in February, March, April, 2022. And now June 3rd, 2022. UW – Nurse Emily Young call to [FLCI] on 6-3-22, and the nurse? Confirmed that the antibiotics was given to [Plaintiff] to [sic] early. As the medical records and dates will show that HSU at FLCI medical staff is unconcern with [Plaintiff's] medical issues. As a result [Plaintiff] has suffered [UTIs] bladder spasms and pains as well as kidney pains, headaches, nausea. [Plaintiff's] record at DOC – FLCI and the UW show that [Plaintiff] is allergic to Amoxicillin and Ibuprofen and Dr. Palop, Rey R. prescribed to [Plaintiff] on 7/19/2022. He also [sic] Dr. Rey R. Palop prescribed Ibuprofen in March, 2022. Dr. Palop, [HSM], [AHSM] Lisa Albrecht has [sic] been lying in the medical record and to the ICE, by Lisa Albrecht on words no [UA] was ordered prior to the June 3rd, 2022 appointment. Yet on the morning of July 15th, 2022, UW – appointment FLCI's HSU did a [UA] prior to [Plaintiff's] appointment at UW. [Plaintiff] seeks compensation for his physical suffering.

On August 2, 2022, CCE Davidson recommended that Plaintiff's appeal be dismissed. On August 17, 2022, the Office of the Secretary adopted the CCE's recommendation and dismissed Plaintiff's appeal.

**FLCI-2022-14785**

On September 30, 2022, the ICE's Office received inmate complaint FLCI-2022-14785. In inmate complaint FLCI-2022-14785, Plaintiff identified the incident date as September 29, 2022, and the issue as: "The new female doctor lied in the medical records claiming that …. [Plaintiff] has 'no known allergies.' I plan on filing a lawsuit for compensation. I was scheduled to [sic] Dr. Palop 9/29/22." Plaintiff provided the following details:

> I tried to reason with the new female doctor – Jane Doe for now. She ask[ed] me to go back to the Unit – 2, and get my medical file to prove to her that I have records showing that I have allergies to Amoxicillin and Ibuprofen. I did as she said, with [sic] was witnessed by the desk officer Broader or the

> guy in the check in office 9-29-2022, at health services, when I came back the doctor was standing there with the officer in his station. The female doctor and myself when [sic] back into her office with my own medical record. I showed her several documents with Bates numbers say [sic] that I am allergic to Amoxicillin and Ibuprofen. I also told the female doctor I just saw Dr. Palop go into the nurses station 9-29-2022. I also told the female Dr.? I went [sic] the UW on 1-28-22, 6-3-22, and 7-15-22. She said that FLCI have no record of that, or no known allergies. The doctor was very aggressive.

On June 30, 2022, the reviewing ICE recommended that inmate complaint FLCI-2022-9200 be dismissed. On October 20, 2022, the Reviewing Authority adopted the ICE's recommendation and dismissed inmate complaint FLCI-2022-14785. Plaintiff appealed the Reviewing Authority's decision. In his appeal, Plaintiff stated:

> 1. I Steven D. Stewart was scheduled to see Dr. Palop on 9/29/2022. When I arrived at [HSU] a new female doctor who I later found out her name is Dr. Godiwalla.
>
> 2. Dr. Godiwalla tried to tell me, Steven D. Stewart that Fox Lake health services had no medical records of Steven D. Stewart having any known allergies. Amoxicillin, Ibuprofen.
>
> 3. But I, Steven D. Stewart explained to Dr. Godiwalla that I have a whole 818 pages file of medical records given to me by the Attorney General's Office in October, 2021. And January 21st, 2022. Bates [Number], 156 Allergies – Allergen •Amoxicillin, reactions respiratory depression. Ibuprofen reactions gastritis. Nurse Ruern also lies – and said they have no medical records of allergies September, 2022. Both Candace Whitman, HSM and Lisa Albrecht [AHSM] both deliberately lied to the ICE by saying [inmate] Stewart does not have any information in his medical file indicating he has known allergies to the two medications records to reflect the allergies.
>
> 4. Then they try [sic] to cover up, Dr. Godiwalla did submit and changed his medical records to reflect the allergies.

> 5. I was no concern of Dr. Palop, Dr. Godiwalla, HSM – Candace Whitman, [AHSM] – Lisa Albrecht, then they try to cover up and lie. They clearly have records. Enclose[d] is Bates [Number] 156. Plaintiff seeks $250,000.00. Dr. Godiwalla told the Sgt.? to write me up because I proved her to be liar. She and Dr. Palop let me suffer infections and pain, and lied to cover up.

On November 7, 2022, the reviewing CCE recommended that Plaintiff's appeal be dismissed. On November 21, 2022, the Office of the Secretary adopted the CCE's recommendation and dismissed Plaintiff's appeal.

**FLCI-2023-17927**

On November 30, 2023, the ICE's Office received inmate complaint FLCI-2023-17927. Plaintiff identified the incident date as November 19, 2023, and the issue as: "I had a medical emergency. My catheter stop draining for approximatel[y] 5 hours no medical staff was at FLCI Sunday night from 6:30 to 11:30 PM. I suffered extreme pain and lots of blood lost. Compensation." Plaintiff provided the following details:

> Amy Zigler, Terry Kior, Sgt. Paulas, Sgt. Sutton, Sgt. Abbott and Nurse Kearn or Jane Doe I talked to [sic] all of these staff members 11/19/20. 11/20/2023. 11/21/2023. An incident report was written by Sgt. Abbott 11/20/2023. On 11/19/23, I started having extreme pain and bladder spasms. I told Sgt. Paulas, Sgt. Paulas called the on call nurse. Sgt. Paulas eyewitnessed [sic] an extreme amount of blood that came from my bladder and private parts. Sgt. Paulas told me Steven D. Stewart to stay in the dayroom, that Sgt. Sutton would bring down catheter supplies. This was approximately 10:00 PM. Sgt. Sutton did show up with the wrong catheter supplies. By this this [sic] my bladder spasms were at maximum pain. So Sgt. Sutton went by to health services and got the right bag of supplies. When I removed the #16 catheter, blood and blood clots came out in the toilet and on the floor in the bathroom on Unit #2, D-Wing. Sgt. Paulas witness the blood!

> On 11/19/23, at approximately 11:30 PM Sgt. Paulas ask [sic] me Steven D. Stewart if I was alright. I told Sgt. Paulas that I am still bleeding from my privates bad. Sgt. Paulas said the on call nurse said that health services will see Steven D. Stewart the thing in the morning. I Steven D. Stewart was still bleeding and having bladder spasms 11/20/2023. I told Sgt. Paulas at 6:00 AM 11/20/23 that I was still bleeding. He said they HSU [sic] will see you this morning. When I got to HSU at 6:45 AM the nurse told Steven D. Stewart she knew nothing about a medical situation Nurse Jane Doe. I saw Nurse Amy Zigler in [HSU]. She was very mean and had no concerns even when I told her that I was bleeding with bladder spasms. I told the foot nurse that I was bleeding from privates at 11:40 AM, she call [sic] the other nurse and Nurse Zigler said put in a blue slip. I saw Amy Zigler at 1:35 PM on 1-20-2023. She sent me back to the unit. Sgt. Abbott called HSU. Nurse Amy Zigler got very mean with Sgt. Abbott. Sgt. Abbott contacted the Lt.? by radio telling her that we have medical emergency, that [inmate] Stewart is bleeding from the groin area. I was sent back to HSU at 2:35 PM. Nurse Amy lied and said that no on call was ever contacted at 9:20 PM. 11/19/2023. When in fact the on call nurse was Terry Kior, who inform [sic] Sgt. Sutton on 11-19-2023, at approximately 10:00 PM as to wear [sic] the catheter supplies could be found, as there was no nurse at [FLCI] during a real medical emergency. As a result I suffered unwanton [sic] infliction of pain I seek monetary compensation. I was treated bad by FLCI staff.

On June 30, 2022, the reviewing ICE recommended that inmate complaint FLCI-2022-9200 be dismissed. On December 27, 2023, the Reviewing Authority adopted the ICE's recommendation and dismissed inmate complaint FLCI-2023-17927. Plaintiff appealed the Reviewing Authority's decision. In his appeal, Plaintiff stated:

> 1. I had a medical emergency. My catheter stop [sic] draining for about 5 hours. No medical staff was at [FLCI] on 11/19/2023, Sunday night from 6:30 PM to 11:30 PM. I was bleeding from my privates where the catheter is [sic] inserted. I suffered extreme pain and lots of blood lost and blood clots.

2. Sgt. Paulus was contacted about Stewart's medical situation Sgt. Paulus eyewitnessed [sic] all the blood. Sgt. Paulus contacted the on-call nurse. She contacted Sgt. Sutton who brought the wrong catheter supplies at 10:00 PM. 11/19/2023. Sgt. Sutton went back to health services [illegible] minutes later and got the right catheter supplies.

3. I changed my catheter at approximately 10:30 PM. 11/19/2023. I had so much blood at [sic] blood clots, and pain I told Sgt. Paulus, who said the on call nurse was at home in the shower. The on call nurse said the (HSU) health 15 services would see me first thing in the morning. Keep in mind I was still bleeding with bladder spasms.

4. The next morning at (HSU) Nurse Amy Zigler and Nurse Jane Doe or Angie, this [sic] had no idea of a medical situation about Steven D. Stewart and his medical situation. On [sic] the morning of 11/20/2023, Nurse Amy Zigler was very mean spirited toward Steven D. Stewart. Amy Zigler would not even examine Mr. Stewart. She had no concerns about his medical emergency. She sent Mr. Stewart back to the unit in pain. Sgt. Abbotts called HSU. Nurse Amy talk [sic] smart to Sgt. Abbotts Nurse Abbotts [sic] wrote an incident report (#585955) Dr. Godiwalla said she knew about the medical situation. But she read the progress not [sic] written by Amy Zigler. Mr. Stewart had a bad urinary infection. They [sic] Mr. Stewart suffer [sic] until 11/20/2023. Continues! Complaint Number FLCI-2023-17927. There is an attempt to cover up what really occurred.

5. I went to health services four times on 11/20/2023. Nurse Amy Zigler said that I Steven D. Stewart refuse [sic] to change my catheter in progress notes. She is lying in the medical records 11/20/2023. I changed my catheter 1/19/2023.

6. Amy Zigler sent Steven D. Stewart back to the unit even though he was having bladder spasms and bleed [sic] from his penis. This is a clear violation of Stewart[']s constitutional rights to adequate medical care. Mr. Stewart was suffering from a severe [UTI]. Nurse Zigler said there was no records of a on call nurse! 11-20-23[.]

7. Mr. Stewart did not see the doctor until 11/20/2023. She played like she didn't hear about the medical emergency of

> 11/19/23. 11/20/23. 11/21/23. I, Mr. Stewart I witness [sic] Dr. Godiwalla pull up [sic] the progress notes. She ordered medication on the November 30th, 2023. On Doctor Godiwalla's computer, these were progress notes of Amy Zigler.
>
> 8. Mr. Stewart suffered for 11 days before he got real medical help!

On January 31, 2024, CCE Davidson recommended that Plaintiff's appeal be affirmed. On February 12, 2024, the Office of the Secretary adopted the CCE's recommendation and dismissed Plaintiff's appeal.

**3. ANALYSIS**

Defendants request partial summary judgment on the ground that Plaintiff failed to exhaust his administrative remedies as to a large portion of his allegations in Case Nos. 25-CV-1014 and 25-CV-1015. ECF No. 21 at 9. Specifically, Defendants argue that Plaintiff failed to exhaust the following portions of his claims in case number 25-CV-1014: (1) that Albrecht allegedly lied to the ICE about Plaintiff's antibiotics on June 15, 2022; (2) that Dr. Palop prescribed Plaintiff Amoxicillin on July 19, 2022, despite clear records showing Plaintiff's allergy to this medication; and (3) that Plaintiff told Kuern about his allergy to Amoxicillin on August 28, 2022, and Kuern told Plaintiff that FLCI had no record of him being allergic to Amoxicillin and Ibuprofen. ECF No. 22 at 2. Further, Defendants assert that Plaintiff failed to exhaust his administrative remedies for the following portions of Case Number 25-CV-1015: (1) that Dr. Palop, Albrecht, and Whitman lied about his medical records and unknown allergies; and (2) that Dr. Godiwalla, Dr. Palop, Albrecht, and Whitman did not treat his severe side effects, kidney pain, headaches, etc., that resulted from taking the medication. *Id*. The Court addresses Defendants' arguments as to each case separately below.

To begin, however, the Court notes that neither party recognizes that the "PLRA's exhaustion requirement does not apply to [P]laintiff's state-law claim." *Page v. Inmate Call Sols.*, No. 21-CV-761-WMC, 2023 WL 7408089, at *3 (W.D. Wis. Nov. 9, 2023). However, Wisconsin imposes a similar exhaustion requirement, "prohibiting prisoners from filing 'a civil action or special proceeding ... with respect to the prison or jail conditions in the facility in which he is or has been incarcerated, imprisoned or detained until the person has exhausted all available administrative remedies that the department of corrections had promulgated by rule.'" *Id.* (quoting Wis. Stat. § 801.02(7)(b)). Courts have found that Wisconsin's law is based on the federal PLRA and the Court may therefore take guidance from relevant federal PLRA case law. *Id.* As such, the following analysis applies to Plaintiff's Eighth Amendment and state-law negligence claims because they are based on the same factual allegations.

**3.1 25-CV-1014**

Defendants argue that portions of Plaintiff's claims were not exhausted because he failed to include them in his exhausted inmate complaints. Although Defendants acknowledge that Plaintiff has exhausted inmate complaints related to his medical care, they argue that none of those inmate complaints notified prison staff of certain issues in this case.

One purpose of the exhaustion requirement is to permit prison officials the opportunity to address inmate concerns internally before an inmate initiates litigation. *Woodford v. Ngo*, 548 U.S. 81, 89 (2006); *Schillinger v. Kiley*, 954 F.3d 990, 995 (7th Cir. 2020). Exhaustion "promotes efficiency because a claim can generally be resolved much more quickly in an administrative proceeding than in litigation in federal court." *Schillinger*, 954 F.3d at 995. To provide notice of the conduct complained of, an inmate's

complaint must contain the information required by the prison's administrative rules. *Strong v. David*, 297 F.3d 646, 649 (7th Cir. 2002). Where those rules are silent, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Id.* at 650; *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004). An inmate need not state "facts, articulate legal theories, or demand particular relief," nor must he name each potential defendant, so long as the grievance "object[s] intelligibly to some asserted shortcoming." *Strong,* 297 F.3d at 650; *Riccardo*, 375 F.3d at 524. In this way, the approach to interpreting inmate complaints is akin to the federal notice pleading system. *Dye v. Kingston*, 130 F. App'x 52, 55 (7th Cir. 2005). Wisconsin's administrative rules provide little guidance as to the required contents of an inmate complaint; however, those rules do require that offender complaints "[c]ontain only one issue per complaint, and [] clearly identify the issue." Wis. Admin. Code DOC § 310.09(1)(e). A prisoner need not "name each specific official, be he does have to put prison staff on notice of a particular problem." *Compton v. Cox,* No. 12-CV-837-JDP, 2017 WL 933152, at *4 (W.D. Wis. Mar. 8, 2017) (citing *Jones v. Bock*, 549 U.S. 199, 219 (2007)).

Here, the Court agrees with Defendants that Plaintiff's exhausted inmate complaints did not address portions of the claims at issue in Case No. 25-CV-1014. Plaintiff argues generally that he exhausted all portions of his claims because he named all the defendants in FLCI-2022-9200. ECF No. 26 at 4. However, the fact that Plaintiff "filed grievances about certain aspects of his medical care does not mean that every claim about his care has been exhausted under *Turley." Compton v. Cox*, No. 12-CV-837-JDP, 2017 WL 933152, at *4 (W.D. Wis. Mar. 8, 2017). Plaintiff's inmate complaints needed to "'alert[ ] the prison to the nature of the wrong for which redress

is sought.'" *Id.* (quoting *Strong*, 297 F.3d at 650). The Court therefore addresses each of Defendants' arguments in turn.

First, the Court finds that none of Plaintiff's inmate complaints exhausted the issue that Albrecht lied to the ICE about Plaintiff's antibiotics on June 15, 2022. FLCI-2022-9200 identified the incident date as June 3, 2022, and complained about cancelled testing. Plaintiff discussed Albrecht's alleged lie about his medical records in his grievance appeal. However, raising an "issue on appeal is not sufficient to exhaust [a prisoner's] claims." *Harris v. Iverson*, No. 16-CV-594-JDP, 2018 WL 1245736, at *4 (W.D. Wis. *Mar. 9, 2018), aff'd,* 751 F. App'x 945 (7th Cir. 2019)*; see also Malone v. Clark*, No. 04-C-229-C, 2004 WL 2504211, at *5 (W.D. Wis. Oct. 26, 2004) ("The exhaustion procedures require plaintiff to raise his claim initially in an inmate complaint and receive a decision on that complaint."). As such, the Court does not find that Plaintiff exhausted this portion of his claim. While this piece of information may be relevant to Plaintiff's claim that prison staff were responsible for his UTIs, it is not a separate issue he exhausted in his inmate complaints.

Second, the Court finds that none of Plaintiff's inmate complaints alerted prison officials of the incident that Dr. Palop prescribed Plaintiff Amoxicillin on July 19, 2022 despite knowledge of his allergies or, third, that Plaintiff told Kuern about his allergy on August 28, 2022. FLCI-2022-4544 was filed in March 2022, well before the alleged July 19 or August 28, 2022 incident. Similarly, FLCI-2022-9200 listed the incident as June 3, 2022. FLCI-2022-14785 lists the incident date as September 29, 2022, and appears to be related only to Dr. Godiwalla. FLCI-2023-17927 lists the incident date as November 19, 2023 and related to Plaintiff's medical emergency for his

catheter not draining. As such, the Court agrees with Defendants that Plaintiff did not exhaust these portions of his claims.

In sum, the Court finds that Plaintiff failed to provide prison officials the opportunity to address his concerns about these issues internally prior to filing this case and therefore failed to exhaust his administrative remedies in this respect. As such, the Court will accordingly grant Defendants' motion for partial summary judgment with respect to the claims in Case No. 25-CV-1014. The above-described portions of these claims will be dismissed without prejudice. *See Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) (finding all exhaustion dismissals should be without prejudice). Defendants agree that Plaintiff did exhaust his administrative remedies with respect to the claim that Dr. Palop, Whitman, Albrecht, and Kuern failed to treat his UTIs. ECF No. 22 at 14. As such, this portion of Plaintiff's claims will proceed on the merits in this case.

**3.2 25-CV-1015**

Defendants argue that portions of Plaintiff's claims in Case No. 25-CV-1015 were not exhausted because he failed to include them in his exhausted inmate complaints. Again, Defendants acknowledge that Plaintiff has exhausted inmate complaints related to his medical care; they argue, however, that none of those inmate complaints notified prison staff of certain issues in this case.

First, the Court agrees with Defendants that none of Plaintiff's exhausted inmate complaints alerted prison officials of the issue that Dr. Palop, Albrecht, and Whitman lied about his medical records and unknown allergies. In FLCI-2022-9200, Plaintiff discussed these defendants' alleged lies about his medical records in his grievance appeal. However, again, raising an "issue on appeal is not sufficient to exhaust [a prisoner's] claims."

*Harris*, 2018 WL 1245736, at *4. FLCI-2022-14785 identified the issue that Dr. Godiwalla lied about his medication at their September 29, 2022 visit but does not mention any other involved medical staff or other dates. The allegations in FLCI-2022-4544 and FLCI-2023-17927 have nothing to do with lies about Plaintiff's allergies or a lack of care from taking medications that caused allergic reactions. The Court therefore finds that Plaintiff failed to notify prison officials of this issue in an exhausted inmate complaint.

Second, the Court agrees with Defendants that none of Plaintiff's exhausted inmate complaints alerted prison officials of the issue that Dr. Godiwalla, Dr. Palop, Albrecht, and Whitman did not treat his severe side effects, kidney pain, headaches, etc., that resulted from taking the medication. Defendants acknowledged that FLCI-2022-14785 exhausted the issue that Dr. Godiwalla lied about Plaintiff's medical records. This inmate complaint does not, however, include any facts that Plaintiff suffered an allergic reaction to the medications or that Dr. Godiwalla or any other staff member failed to provide adequate medical care. Again, Plaintiff's appeal of this complaint contained more details that Plaintiff suffered infections and pain as a result of the defendants' lies and cover up of Plaintiff's allergies; however, Plaintiff needed to include that information in the initial complaint to properly exhaust the issue. The Court therefore finds that Plaintiff failed to notify prison officials of this issue in an exhausted inmate complaint.

In sum, the Court finds that Plaintiff failed to provide prison officials the opportunity to address his concerns about these issues internally prior to filing this case and therefore failed to exhaust his administrative remedies with respect to these portions of Case No. 25-CV-1015. As such, the Court will accordingly grant Defendants' motion for partial summary

judgment with respect to the above-mentioned portions of the claims. These claims will be dismissed without prejudice. *See Ford*, 362 F.3d at 401. Defendants agree that Plaintiff did exhaust his administrative remedies with respect to the claim that Dr. Godiwalla lied about his medical records and unknown allergies. ECF No. 22 at 15. As such, this portion of Plaintiff's claims will proceed on the merits in this case.

## 4. CONCLUSION

For the reasons explained above, the Court will grant Defendants' motion for partial summary judgment, ECF No. 21. As such, the above-mentioned portions of Plaintiff's claims in Case Nos. 25-CV-1014 and 25-CV-1015 will be dismissed without prejudice. The remaining portions of these cases will proceed on the merits along with the claims in Case No. 25-CV-391.The Court will issue a scheduling order in due course.

Accordingly,

**IT IS ORDERED** that Defendants' motion for partial summary judgment based on the exhaustion of administrative remedies, ECF No. 21, be and the same is hereby **GRANTED in full**;

**IT IS FURTHER ORDERED** that the following portions of Plaintiff's Eighth Amendment deliberate indifference and state-law negligence claims in Case No. 25-CV-1014 be and the same are hereby **DISMISSED without prejudice**: (1) that Albrecht allegedly lied to the ICE about Plaintiff's antibiotics on June 15, 2022; (2) that Dr. Palop prescribed Plaintiff Amoxicillin on July 19, 2022, despite clear records showing Plaintiff's allergy to this medication; and (3) that Plaintiff told Kuern about his allergy to Amoxicillin on August 28, 2022, and Kuern told Plaintiff that Fox Lake Correctional Institution had no record of him being allergic to Amoxicillin and Ibuprofen;

**IT IS FURTHER ORDERED** that the following portions of Plaintiff's Eighth Amendment deliberate indifference and state-law negligence claims in Case No. 25-CV-1015 be and the same are hereby **DISMISSED without prejudice**: (1) that Dr. Palop, Albrecht, and Whitman lied about his medical records and unknown allergies; and (2) that Dr. Godiwalla, Dr. Palop, Albrecht, and Whitman did not treat his severe side effects, kidney pain, headaches, etc., that resulted from taking the medication;

**IT IS FURTHER ORDERED** that Plaintiff's motion for the return of filing fees, ECF No. 20, be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that Plaintiff's motion to file a surreply, ECF No. 33, be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 11th day of September, 2026.

BY THE COURT:

J. P. Stadtmueller
U.S. District Judge